Cite as 2026 Ark. App. 235

# ARKANSAS COURT OF APPEALS
## DIVISION IV
### No. CR-25-464

| | |
|---|---|
| BRYAN ROGERS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered April 15, 2026<br><br>APPEAL FROM THE RANDOLPH COUNTY CIRCUIT COURT<br>[NO. 61CR-22-169]<br><br>HONORABLE ROB RATTON, JUDGE<br><br>AFFIRMED |

## WENDY SCHOLTENS WOOD, Judge

Bryan Rogers appeals the Randolph County Circuit Court sentencing order convicting him of three counts of attempted capital murder, fleeing, arson, and five counts of aggravated assault on a law enforcement officer. He was sentenced to a total of 3168 months' imprisonment. For his sole argument on appeal, Rogers contends that the circuit court erred when it instructed the jury on premeditated and deliberated attempted capital murder. We affirm.

On September 8, 2022, the State charged Rogers with three counts of attempted capital murder along with arson, fleeing, and five counts of aggravated assault on a law enforcement officer.[1] The information provided that the attempted-capital-murder charges

---

[1]On March 13, 2025, the State filed an amended information to include a habitual-offender allegation, but the attempted-capital-murder charges remained the same.

were brought pursuant to "Ark. Code Ann. § 5-10-101" and that Rogers "did unlawfully and feloniously . . . attempt the crime of CAPITAL MURDER, by attempting to cause the death of Kevin Bell by setting Kevin Bell's residence on fire while he was inside the residence." The second and third counts of attempted capital murder were identical except that they identified the victims as the wife and minor son of Randolph County Sheriff Kevin Bell.

A jury trial took place over several days in March 2025. Before jury selection began, defense counsel sought clarification of one of the State's proposed jury instructions and asked whether the State's allegations of attempted capital murder were felony-murder allegations.[2] The State responded that it would need to look at it, and the court stated it would take up the issue at "some point in time."

After jury selection, defense counsel again raised the issue of the State's proposed jury instruction stating:

> [A]s this Court is aware, there are multiple kinds of capital murder and murder . . . in the State of Arkansas. There is--there's capital murder which requires premeditated and deliberated, purposeful murder, and then there's felony murder--felony capital murder.
>
> And the State has provided me a jury instruction that states, Bryan Rogers is charged with three counts of the offense of attempted capital murder. A person commits the offense of capital murder if he commits the offense of arson and in the course and furtherance of the arson causes the death of another person. Then it goes on to say, to sustain the charge of attempted capital murder, the State must prove the following things beyond a reasonable doubt.
>
> First, that Bryan Rogers intended to commit the offense of capital murder. And second, that Bryan Rogers purposefully engaged in conduct that was a substantial

_____

[2]The State's proposed jury instructions are not part of our record on appeal, but defense counsel read from them during argument at trial.

2

step in the course of conduct intended to culminate in the commission of capital murder. And third, that Bryan Rogers' conduct was strongly corroborative of the criminal purpose.

It's almost a mashing of the two . . . [A]nd so, I'm asking, is this an allegation that he committed a felony murder—or attempted felony murder, or attempted capital murder, premeditated and deliberated? And I believe I'm entitled to know that because those are . . . not the same thing. One is attempting to do an arson and bad things happened, the other is I'm attempting to do a murder and . . . those are . . . completely different intents that the entire trial would be based on.

And so, I'm asking the State to disclose, does the State—if the State believes these are the elements, which would be a felony murder allegation.

The State responded and asserted that "when [Rogers] committed the arson, he intended to kill. He purposely intended to kill. . . . [I]t's confusing to say felony murder because when we talk about felony murders . . . somebody died in the felony. This is a criminal attempt, nobody died."

The court attempted to explain what defense counsel was asking—whether the State was proceeding under the capital-murder subdivision of the statute where someone was committing a felony (arson) "and as a result, the attempted capital murder" or the other part of the statute that says "he intended to commit murder." The State responded, "I believe—I'm using the one with the arson." Defense counsel stated that was felony murder and "that's fine with me." The court told the parties they could each submit proposed instructions and that it would decide which one to use. The State clarified, "But I do want it known, I am going to try to prove [Rogers] intended to kill. . . . [I]f there's a better jury instruction for this before we submit them to the jury, I want to do that. But I am . . . putting on evidence that he intended to kill purposely." Defense counsel responded that he only had to disprove the

3

felony-murder allegations that require "you were doing a felony and bad things happened . . . . You've [the State] clarified it. . . . [A]nd that's in accordance with the jury instruction you submitted to me that I read into the record." The State again asserted that the first sentence of the attempt portion of the jury instruction provided the mental state that Rogers intended to kill.

After the parties continued to argue their positions, the court said, "I understand, but this is an attempt. I think we're splitting hairs is what we're doing. But [the State says its] going under felony murder . . . ." The State said that it was moving forward with the proposed instruction and did not care "how we label it." The court told defense counsel he could submit an instruction if he disagreed, to which counsel responded, "Absolutely."

Trial testimony revealed that James Hickey of Arkansas Ankle Monitor placed an ankle monitor on Rogers in 2021, which was programmed, unbeknownst to Rogers, with an exclusion perimeter of three thousand feet in any direction of Sheriff Bell's home. Hickey explained that the system notifies him when the person being monitored enters the exclusion zone. Around 1:00 a.m. on July 11, 2022, Hickey was alerted that that there was a breach of the exclusion zone, meaning that Rogers was within the perimeter of Sheriff Bell's home. Hickey called Sheriff Bell and provided Rogers's location to law enforcement. According to records, Rogers remained in the exclusion zone for thirteen minutes.

Sheriff Bell testified that he had known Rogers for years and had seen him driving past his house frequently, noting that Rogers had land in the area.[3] After receiving Hickey's call, Sheriff Bell woke his wife and told her to wake their son. Sheriff Bell got dressed, grabbed his gun, and heard an "explosion" or "loud thump" from the south end of the home. Sheriff Bell's wife screamed that the house was on fire. When Sheriff Bell was putting out the fire, he saw a truck that looked like Rogers's truck driving away. The following day when he returned home, Sheriff Bell smelled gasoline and saw that the fire had almost reached the roof's shingles.

The investigation revealed a melted plastic bottle that smelled of gasoline and contained wadded up tissue paper used to ignite the bottle. The device was likened to a Molotov cocktail device that was believed to have been put on the window ledge hoping it would explode and ignite the fire.

Because of Rogers's ankle monitor, law enforcement was able to track his location as he fled at speeds exceeding one hundred miles an hour. Despite law enforcement activating their blue lights, Rogers did not stop, managed to avoid spike strips, was pushed off the road, and continued to flee. Rogers shot at law enforcement during the chase, which ended when law enforcement successfully performed a precision-immobilization-technique maneuver. Rogers was taken into custody. Multiple guns, including a rifle, and an assortment of

---

[3]Sheriff Bell also testified that in 2006 when he worked for the Arkansas State Police, Rogers had come to his home and said he had thought about killing the sheriff because Rogers felt disrespected during a traffic stop but that he had forgiven Sheriff Bell.

ammunition were found in Rogers's truck. It was determined that five shell casings found along the chase route had been fired from a rifle found in Rogers's truck.

The jury-instruction issue arose again during an in-chambers meeting on the second day of trial when the State requested to amend the information to add the premeditation and deliberation elements. Defense counsel opposed the amendment and objected to the State's being able to submit that theory to the jury, asserting that was why he raised the issue at the outset of trial, the State chose the arson version of felony murder, and to allow the amendment would be a due-process violation. The State responded that it was not changing the statute or alleging a new crime but just using a different subdivision under which Rogers was charged. The State asserted that it already had to prove intent but that now it is premeditated, which is supported by the facts, and that that it did not affect the degree of punishment or change the nature of the defense. Defense counsel claimed unfair surprise, asserting that the State changed the intent from the intent to commit the felony (arson) to the intent to commit murder. Defense counsel argued that Rogers would be prejudiced because counsel had been defending an arson that did not result in death, and if the information were amended, he would be defending Rogers's alleged premeditated killing of Sheriff Bell and his family. The State argued that it did not limit itself to any particular jury instruction, noting that instructions could change after the evidence is introduced. Ultimately, the court asked why an amendment was needed if both sides could submit instructions, and the State said it may be unnecessary. The court denied leave to amend the information and told the parties to submit instructions from which the court would choose.

After the State rested, Rogers did not move for a directed verdict challenging the sufficiency of the evidence, but he moved to dismiss the attempted-capital-murder charges, arguing that attempted felony murder is a legal fiction because "you cannot intend to do the unintended. And for an attempt to be a thing, you have to attempt—you have to intend to do something. But for felony murder, you never have to intend to commit a murder." The circuit court denied the motion.

The defense rested without calling any witnesses, and the parties addressed the jury-instruction issue one final time. Thereafter, the circuit court, over Rogers's objections, instructed the jury with AMI Crim. 2d 501 "Criminal Attempt–Capital Murder" that included two subdivisions of Arkansas Code Annotated section 5-10-101:

> Bryan Rogers is charged with the offense of attempted Capital Murder. A person commits the offense of Capital Murder if
>
>> he commits the offense of arson, and in the course of and in furtherance of the arson, causes the death of another person
>>
>> OR
>>
>> That with the premeditated and deliberated purpose of causing the death of another person he caused the death of another person.
>
> To sustain the charge of attempted capital murder, the State must prove the following things beyond a reasonable doubt:
>
>> First: That Bryan Rogers intended to commit the offense of Capital Murder
>>
>> and
>>
>> Second: That Bryan Rogers purposely engaged in conduct that was a substantial step in a course of conduct intended to culminate in the commission of Capital Murder

7

and

> Third: That Bryan Rogers' conduct was strongly corroborative of the criminal purpose.

*See* Ark. Code Ann. § 5-10-101(a)(2) & (4) (Supp. 2025) (capital murder); *Id.* § 5-3-201 (Repl. 2024) (criminal attempt). The jury found Rogers guilty of attempted premeditated and deliberated capital murder. This appeal followed.

For his sole point on appeal, Rogers contends that the circuit court erred when it instructed the jury as to the premeditated-and-deliberated subdivision of the attempted-capital-murder statute. He contends that the State charged him only under the felony-murder subdivision of section 5-10-101, and the circuit court denied the State's request to amend the information to add the premeditated-and-deliberated-purpose subdivision of the statute, yet the court instructed the jury with the premeditated-and-deliberated-purpose subdivision. As a result, he contends, he was convicted of an offense for which he was not charged. For additional support, he argues that the State's proposed jury instruction on attempted capital murder that was discussed before trial included only the felony-murder theory of arson under section 5-10-101(a)(2)(A)–(B).

In *Renfro v. State*, our supreme court stated that a criminal information must contain the elements of the crime so that a defendant can adequately prepare the case against him or her. 331 Ark. 253, 256, 962 S.W.2d 745, 747 (1998) (citing *Williams v. State*, 302 Ark. 234, 788 S.W.2d 241 (1990)). It held, as a result, that the language of the information limited the State to proof of those specific elements set out in the information and that proof of

8

other elements constituting separate crimes constituted a fatal variance. *Id.*, 962 S.W.2d at 747.

Arkansas Code Annotated section 5-10-101 provides in pertinent part:

(a) A person commits capital murder if:

. . . .

(2) Acting alone or with one (1) or more other persons:

(A) The person commits or attempts to commit arson, § 5-38-301; and

(B) In the course of and in furtherance of the felony or in immediate flight from the felony, the person or an accomplice causes the death of any person;

. . . .

[or]

(4) With the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person[.]

Ark. Code Ann. § 5-10-101(a)(2)(A)–(B) & (4). The information filed against Rogers did not cite a specific subdivision of the capital-murder statute beyond section 5-10-101. However, the information alleges that Rogers committed attempted capital murder "by attempting to cause the death of [the victim] by setting [the] residence on fire while [the victim] was inside the residence." This notified Rogers that he was being charged with attempted capital murder because he attempted to cause the death of his three victims, which is entirely consistent with the premeditated and deliberated purpose of causing death under subdivision (a)(4), not subdivision (a)(2)(A)–(B). Notably, the information does not include any attempted-capital-murder allegations about committing or attempting to commit "arson" or that in the

9

course of and in furtherance of the "arson" or in immediate flight from the felony, Rogers caused three deaths.

The State's proposed attempted-capital-murder instruction was not the model of clarity. However, defense counsel acknowledged that the State's proposed instruction was a "mashing" of subdivisions (a)(2) and (4). When defense counsel sought clarification, the State initially expressed confusion but then unequivocally and repeatedly asserted that it planned to prove that Rogers intended to kill his victims—not that he intended to commit arson and, in the course of and in furtherance of the arson, caused the death of the sheriff and his family. Moreover, this was merely the State's proposed instruction. Throughout the trial, the circuit court repeatedly invited the parties to submit instructions and told them it would choose which instructions to give the jury at the conclusion of trial.

Rogers argues that *Renfro*, *supra*, which held that a defendant cannot be convicted of an uncharged subdivision of an offense, is "mandatory authority governing this appeal" and requires reversal. We note that our supreme court has held that "[t]he Arkansas Constitution would be violated if the [circuit] court, in effect, amended a criminal information by instructing the jury on an uncharged offense." *McFarland v. State*, 337 Ark. 386, 396, 989 S.W.2d 899, 905 (1999) (citing *Renfro*, 331 Ark. 253, 962 S.W.2d 745). However, *Renfro* is clearly distinguishable.

Renfro was charged under a specific subdivision of Arkansas Code Annotated section 8-6-205, which made it unlawful to dispose of solid waste on property owned by another without the written permission of the owner or occupant of the property. *See* Ark. Code

Ann. § 8-6-205(a)(4) (Repl. 2022). Specifically, the information alleged that Renfro illegally disposed of solid waste on property owned by another person without the written permission of the owner or occupant of the property, which tracked the language of section 8-6-205(a)(4). *Renfro*, 331 Ark. at 255, 962 S.W.2d at 747. At trial, the State submitted an instruction, over Renfro's objection, that included two alternate violations under other subdivisions that required different conduct.[4] The jury was instructed that if it found Renfro guilty of conduct under any of the three subdivisions, it could find him guilty of the crime of illegal disposal of waste. The supreme court reversed and remanded for a new trial, concluding that the circuit court effectively allowed an amendment to the charge when the State did not ask for one, which could not be harmless error because Renfro had no opportunity to prepare a defense. *Id.* at 257–59, 962 S.W.2d at 748–49.

In *Renfro*, the information quoted the language of a specific statutory subdivision, and the jury was instructed on uncharged subdivisions. In the present case, unlike *Renfro*, there is no specific subdivision of the capital-murder statute cited or quoted in the information. Moreover, as stated above, the attempted-capital-murder allegations in the information state nothing about committing or attempting to commit "arson" or that in the course of and in furtherance of the "arson" or in immediate flight from the felony, Rogers caused a death. Rather, the information charged that Rogers attempted to *cause the death* of each of the

---

[4]The other two subdivisions involved disposal without a permit or disposal that created a public nuisance. *See* Ark. Code Ann. § 8-6-205(a)(3) & (a)(5).

victims *by setting the residence on fire* while they were inside. This is sufficient to apprise Rogers

that he allegedly acted with the premeditated and deliberated purpose to cause death.[5] Thus,

Rogers was not convicted of an uncharged crime. Accordingly, we affirm.

Affirmed.

THYER and BROWN, JJ., agree.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.

---

[5]And the State unequivocally asserted that it intended to present this attempted-capital-murder violation to the jury.